## DANIEL S. BURSEN *et al.*

### *v.*

## MARTIN L. GOODSPEED, Adm'r, etc.

| 60 | 277 |
| 26a | 218 |
| 60 | 277 |
| 124 | 634 |
| 60 | 277 |
| 146 | 50 |
| 60 | 277 |
| 178 | 282 |
| 60 | 277 |
| 184 | 167 |
| 60 | 277 |
| e189 | ²336 |
| f189 | ²339 |
| 60 | 277 |
| 212 | ¹581 |
| e212 | ²582 |

1.  LIMITATION—*application by administrator for sale of land to pay debts.* There is no period of time fixed by the statute of limitations within which an administrator is required to file his petition for leave to sell real estate for the payment of debts, but, in analogy to the statutes of limitation relating to the lien of judgments, and, under certain circumstances, to bringing the action of ejectment, seven years have been held to bar numerous proceedings, but in the absence of statutes on such subjects, each case must largely depend on its own circumstances, and where more than seven years have elapsed, the delay may be explained.

2.  ADMINISTRATOR—*petition to sell real estate.* An administrator, a short time after the grant of letters of administration, filed his petition to sell real estate to pay debts, and a portion of the creditors opposed the sale at that time on the ground that the proceeds thereof would amount to but little more than enough to pay the widow $1,000 for her homestead and the value of her dower in the land, and a sale would operate as a sacrifice of the property without benefit to the creditors; the application was continued from term to term and finally discontinued; and after a number of years the administrator was removed and another appointed; and subsequently, after the lapse of some eleven years from the grant of the first letters, this proceeding was commenced; the widow had died, and the heirs were all of age: *Held,* that these circumstances sufficiently explained the delay, and that, as the land was held by the heirs of deceased, the order for the sale thereof might be made, notwithstanding more than seven years had elapsed.

3.  EVIDENCE. The evidence that one of the heirs had purchased the interest of others, but whether before or after the commencement of the proceeding, did not appear, nor whether the purchase had been consummated or the consideration paid, was too loose to be considered by the court.

4.  EQUITY. In a proceeding of this character the court has no power to adjust the equities of the parties. The statute only confers power to order the sale of the real estate, in a proper case.

5.  MINORITY—*guardian ad litem.* The minority of a woman ceases in this State at the age of eighteen years, and in a case of this kind the statute does not require the appointment of a guardian *ad litem* for a female defendant over eighteen, and under twenty-one years of age.

6. PRACTICE. Where defendants, in a case of this kind, demur in the county court, to the petition, and the demurrer is overruled and they file an answer, it is not error in the circuit court on appeal to strike a demurrer from the files when it has been filed in that court.

APPEAL from the Circuit Court of Bureau county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. S. M. KNOX, for the appellants.

Mr. GEORGE O. IDE, and Mr. MILO KENDALL, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an application by an administrator for leave to sell eighty acres of land for the payment of debts of his intestate.

The intestate died January 1, 1856; letters of administration on his estate were granted February 5, 1856. This petition by the adminstrator was not presented until September 27, 1869.

The main question in the case is, whether the lien which creditors have upon the real estate of their deceased debtors, for satisfaction of their debts, and which they may enforce through administration, has not been lost by the lapse of time between the intestate's death and the filing of the administrator's petition in the county court.

It is insisted that the lapse of more than seven years has barred the proceeding. There being no statutory period of limitation within which the lien must be enforced, this court has held that, in analogy to our statutes of limitation relating to the lien of judgments, and under certain circumstances to bringing the action of ejectment, the period of seven years should be adopted by the courts as the time within which the application should be made. But while this is the general rule where the delay is unexplained, every case depends much upon its own circumstances, and if the delay is satisfactorily

explained, the mere lapse of time is not a reason why the order of sale should not be made. *McCoy* v. *Morrow,* 18 Ill. 519 ; *Rosenthal* v. *Renick,* 44 Ill. 203 ; *Moore* v. *Ellsworth,* 51 Ill. 309.

We are brought, then, to the inquiry, whether the circumstances of the case afford a justification for this delay on the part of the administrator.

The land described in the petition comprised only eighty acres. It was occupied by the intestate at the time of his death, as his homestead, and appears from the evidence, at that time, to have been worth not to exceed $1,200. The intestate left, surviving him, his widow and eight children, four of whom were minors, the youngest of whom attained the age of eighteen years in April, 1869. The widow continued to reside upon the land from the death of the intestate up to the first day of July, 1869, the date of her death, occupying it during all this time under her right of homestead and of dower, her children, except Samuel S. Smith, living with her until they married or went off to care for themselves.

Judgments in favor of the creditors of the decedent were rendered by the county court against the estate, amounting in all, with the unpaid part of the widow's allowance, to the sum of $1914.14, all rendered within two years from the grant of letters of administration, except two, rendered September 19, 1859, and these were before any inventory of the real estate had been filed by the administrator. There was a deficiency of personal assets to pay any part of this indebtedness. On the 1st of March, 1858, the administrator rendered to the county court an account current of his administration of the estate, showing an entire exhaustion of the personalty, and that the estate was indebted to him in a balance of $321.74, which was approved by the court. The estate being wholly unable to pay the judgments allowed, the administrator, on December 6, 1858, petitioned the county court for leave to sell the land for the purpose of paying the indebtedness. The widow answered the petition, setting up her rights of dower

280 BURSEN *et al. v.* GOODSPEED, ADM'R, ETC. [Sept. T.,

Opinion of the Court.

and homestead, asking the court to reserve from sale for the payment of debts a homestead·of the value of $1,000 and her dower.

On the 9th day of February, 1859, two of the creditors of the estate presented and filed in the county court their petition in writing, asking the court not to grant the leave asked by the administrator to sell the land, for the reason that if the land should be sold then, in their opinion it would not sell for more than $2,000 ; that of that, the widow would be entitled to $1,000 in lieu of homestead exemption, and her dower besides, so that, after satisfying these claims, nothing would be left to pay the debts, and that, in their opinion, it would be for the interest of the heirs, as well as the creditors, not to have the land sold, especially at that time, as by such sale the heirs would lose the land, and the creditors their debts.

The opinion which might be inferred from the petition, that the land would sell for $2,000, was a mistaken one, as appears from the testimony of witnesses, none of them fixing the value of the land, at that time, as higher than $1,600, or thinking that it would realize on sale at public auction more than $100 or $200 over and above these incumbrances of homestead and dower.

This application was regularly continued from term to term, until the March term 1859, and then seems to have become discontinued, as the record of the county court shows nothing further in regard·to it.

On the 7th of March, 1859, Blake, the administrator, was removed from office on account of the insufficiency of his security, and inability to give further security, and Goodspeed, the appellee, was appointed administrator in his stead.

On the 28th of June, 1867, at the instance of two of the creditors, a citation was issued by the county court against Goodspeed, to compel him to make a settlement of the estate, in answer to which he made a written statement setting forth, substantially, the same facts and reasons for not proceeding to have the land sold for payment of the debts, as in

the above petition of creditors against selling the land, which the court approved, and dismissed the citation.

The land still remains in the hands of the heirs ; nothing deserving the name of valuable improvements has been put upon it since the decease of the intestate.

It is contended by appellee's counsel that, to constitute a sufficient reason for the delay, there should have been some obstacle in the way of selling the land ; that here it might have been sold subject to the incumbrances upon it, and would have been sold but for the interference of the creditors themselves, and that regard for their interests affords no excuse for delay.

There were here both the rights of a homestead and of dower in the land, (*Walsh* v. *Reis*, 50 Ill. 478,) the former to continue, if there was occupancy of the premises, until the youngest child should become twenty-one years of age, and until the death of the widow, unless extinguished by the payment of $1,000 ; and by virtue of the latter right the widow was, by the statute, entitled to retain possession of the land until her dower should be assigned, which appears never to have been done.

The land descended to the heirs subject to the debts. The amount of the indebtedness was so large in comparison with the value of the land, that it may be said, that aside from the homestead right, and the enjoyment of the rents and profits until the land might be sold to pay debts, the heirs had no substantial interest in the property ; and as it was no interference with the full enjoyment of the rights of homestead and dower, and of the rents and profits, it is not perceived wherein there was injustice to any one in consulting the interests of the creditors by delaying to enforce a sale until those rights might become extinct. It is quite evident that, forcing the land to a sale at public auction, incumbered as it was with the claims of homestead and dower, would have been a palpable sacrifice of the creditors' rights in the land ; that they would not have derived any appreciable benefit from the sale;

as expressed in the petition of the creditors against it, the heirs would have lost the land and the creditors their debts. What just cause of complaint have the heirs that that result was not precipitated? We think it unreasonable to hold the creditors bound to resort to a fruitless and destructive sale.

No one appears to have been misled by the delay to his injury. The heirs did not go on and make valuable improvements under the belief that the estate was settled, and that there were no unpaid demands against it to be enforced against the land. The debts all appeared established in due time upon the records of the county court. An early application had been made to have the land sold for their payment, to which the heirs were made parties, and was discontinued under circumstances such as to apprise them that resort to the land was not finally abandoned, but suspended only, to be renewed at a future time.

There has been no alienation of the land to strangers, nor any as among the heirs themselves, whereby intervening rights have been innocently acquired, which might be injuriously affected.

We do not recognize as such, the agreement testified to by Samuel Smith, that, at the time of his buying the notes and trust deed on the land from Dodge, which will hereafter be adverted to, the heirs, who were then of age, agreed that he should have the land after the death of the widow if he would secure the homestead for her. We do not perceive what the purchase of the notes and trust deed had to do with securing the homestead, or how he did so secure it for the widow. The deed of trust does not appear in the record, and we do not know whether the homestead was released by it or not.

Samuel Smith, at the time of giving his testimony, a year after the petition was filed, testifies to having bought out some of the heirs, without stating the time or for what consideration, and also testifies to some uncompleted arrangement for disposing of his interest to the husband of one of the heirs. But we can not perceive, from the record, that at the time

this proceeding was commenced, even as among the heirs themselves, in any dealing in regard to the land, any valuable consideration had been parted with from one to another, on the faith of their ownership of the property.

We are of opinion that the state of facts existing in this case furnishes a satisfactory excuse for the delay in making this application.

It appears that the decedent, in his life time, had made a deed of trust on the land to one John Dodge, to secure the payment of his notes to the latter for $360 and interest; and Samuel S. Smith, one of the heirs, sets up that, after the death of the intestate, he purchased from Dodge the notes and deed of trust, and claims that such purchase money should be first paid, and that he should be subrogated to the rights of Dodge in the premises, and that it was error not to allow such claim. The court had no jurisdiction to settle the priority of equities in this proceeding. It is a statutory and not a chancery proceeding. *Moline Water Co.* v. *Webster*, 26 Ill. 233. Under the statute the court is only authorized to license the executor or administrator to sell real estate, and in a proceeding under its provisions all beyond is unauthorized.

Neither the county court nor the circuit court could exercise any other jurisdiction than that conferred by the statute, and that does not confer chancery powers or enable the court to settle equities. *Bennett* v. *Whitman*, 22 Ill. 449; *Cutter* v. *Thompson*, 51 Ill. 390.

Wealthy M. Gordon, one of the defendants, was under the age of twenty-one years, and it is claimed there was error in not appointing a guardian *ad litem* for her, under the statute under which this proceeding is had, which provides, "When it shall appear that any of the persons required to be made parties defendants are minors under the age of twenty-one years, without a guardian, etc., the court shall appoint a guardian *ad litem*, who shall be required to appear and defend in behalf of the minors aforesaid." But this defendant, although under twenty-one years of age, was not a minor, she being

upwards of the age of eighteen. years, when the minority of females under our law ceases.   It was not the meaning of this statute that a guardian *ad litem* should be appointed for a female defendant who had attained the age of eighteen years.

It is claimed there was error in striking the demurrer of the defendants from the files of the circuit court.   They demurred in the county court, and their demurrer was overruled; and then, instead of abiding by the demurrer, they filed their answers upon which the issue was formed and hearing had. The statute provides for written pleadings by filing answer and replication, and forming issues as in chancery proceedings, and on appeal the circuit court takes up and disposes of the issues as they were formed in the county court, and the defendants in this case could not claim the right to file a demurrer in the circuit court.

Perceiving no error in the record, the decree of the court below must be affirmed.

*Decree affirmed.*