## ALBERT McCOLLISTER
### v.
## HARRIET KING ET AL.

1. ADMINISTRATION OF ESTATES—SALE OF LAND TO PAY DEBTS—STATUTE OF LIMITATIONS.—There is no statute of limitations which prevents the commencement of proceedings to sell land for the payment of debts after the expiration of seven years from the date of decease, or the allowance of claims against the estate.

2. LIMITATION BY ANALOGY FROM OTHER STATUTES.—Such a petition ought not to be entertained after the lapse of seven years, unless the reason of the delay be explained, and perhaps not then, if the rights of innocent purchasers are to be injuriously affected thereby. This period of seven years has been adopted from the analogies of the law in other cases.

3. REASON FOR DELAY.—What will be a sufficient excuse for delay in such proceedings will depend upon the peculiar circumstances of each case. In this instance, the promise by the heirs to pay the creditor after the termination of the life estate is considered sufficient.

APPEAL from the Circuit Court of Logan county; the Hon. A. G. BURR, Judge, presiding.    Opinion filed January 17, 1882.

Mr. OSCAR ALLEN for appellant; that sales have been ordered after the lapse of more than seven years, cited Vansycle v. Richardson, 13 Ill. 171; Rosenthal v. Renick, 44 Ill. 202; Moore v. Ellsworth, 51 Ill. 308; Clark v. Hogle, 52 Ill. 427; Bursen v. Goodspeed, 60 Ill. 277.

In this case appellee, Harts, had knowledge of the claims, and can not be regarded as an innocent purchaser without notice: Harper v. Ely, 56 Ill. 179; Henneberry v. Morse, 56 Ill. 394; Babcock v. Lisk, 57 Ill. 327.

Messrs. BEASON & BLINN for appellees; that the delay must be explained by proof that would relieve the administrator

and creditor of laches, cited Rosenthal v. Renick, 44 Ill. 202; Moore v. Ellsworth, 51 Ill. 308; Wolf v. Ogden, 66 Ill. 224.

McCulloch, J. The only question presented by this record is whether or not the facts in the case are sufficient to justify a decree to sell land, by an administrator, to pay the debts of his intestate, when the petition for such sale was not presented within seven years from the time the debts were allowed by the probate court.

John King died in the year A. D. 1868, leaving surviving him his widow, Nancy King, to whom, by his will duly probated, he left the use of all his property, real and personal, during her life, and after her death he left to other persons certain legacies charged upon his estate, amounting in all to $1,800, with remainder in four equal parts to Jacob, John, Andrew, and the children of James N. King.

Andrew King died November 24th, 1872, before the said Nancy, without ever having come into the possession or enjoyment of his share of the property devised to him in remainder by the will of John King. His widow Harriet and three children, George, William and Jennie, survive him, who, by their deed of February 23d, 1880, conveyed all their interest in the lands in question to David H. Harts.

Appellant was appointed administrator of the estate of Andrew King, on the 23d day of March, A. D. 1873, and, at the September term of the county court in the same year, certain claims were allowed against said estate, including one in favor of Jesse H. Thompson, for the sum of $267.00. The estate of Andrew King never had any personal assets applicable to the payment of debts, and the claims against said estate amount to $375.19, duly probated.

Nancy King, widow of said John King, died November 2, A. D. 1880, having enjoyed the use of said land to the time of her death. The petition in this case was filed on the —— day of October, A. D. 1880, more than seven years after the allowance of the claims in the county court, and before the death of the tenant for life; but the cause was not heard until after her death. The widow and heirs of Andrew King were

made parties defendant, and admitted the allegations of the petition, but alleged that they had sold their interest to Harts before the petition was filed.

David Harts was also made defendant to the petition, and answered, admitting the facts alleged, but alleging that he had purchased the premises from the widow and heirs of said Andrew King in good faith and for a valuable consideration, on the 23d day of February, A. D. 1880; that more than seven years had elapsed after the death of said Andrew, and after proof of said claims, before the filing of the petition, wherefore he sets up and relies upon the statute of limitations.

It will be seen from the foregoing statement of facts that, although the petition was not filed within seven years after the allowance of the claims, and although the purchase of Harts was more than seven years after the death of Andrew King, yet it is also true that said purchase was within seven years after the granting of letters of administration, and consequently within seven years after the allowance of the claims against the estate.

It also appears that Harts purchased with full notice of the claims allowed against the estate; that at first he had offered $450 for the interest of the widow and heirs of Andrew King, but, on discovering the claims, he reduced his offer to $250, saying he might have to litigate them, and at that price he made the purchase.

The whole tract was then estimated to be worth not less than $6,000; it was subject to the said legacies and to unpaid taxes to the amount of $550, one-fourth of which sums were properly chargeable upon the share of said Andrew, so that at the time of his purchase, had it not been for the intervening life estate of Nancy King, and the existence of said claims, the interest purchased by Harts ought to have been worth about $900, which he purchased for $250.

Appellant says the reason he never petitioned sooner to sell the land was, that he doubted whether said Andrew had any such interest as could be sold, and whether the land would sell for much, left as it was by the will.

Thompson, the principal claimant, testified that he had the

petitioner file this petition; that one reason why he did nothing sooner was, that the heirs told him that after the death of the tenant for life, his claim should be paid out of the land, and he also doubted whether there was such an interest as could be sold; that while Andrew was alive he consulted a lawyer about buying his interest, but was advised not to buy, and it was from this advice his doubts arose; that, as soon as he learned the heirs had sold, he went to Harts, who told him he could get nothing from him that he did not get by law.

There is no statute of limitations which prevents the commencement of proceedings such as this after the expiration of seven years from the date of decease or the allowance of claims against the estate. It has been frequently said, however, by the Supreme Court, that such a petition ought not to be entertained after the lapse of seven years, unless the reason for the delay be explained, and perhaps not even then if the rights of innocent purchasers are to be injuriously affected thereby. This rule has been adopted in furtherance of justice, and for the protection of the innocent against stale claims. The period of seven years is adopted from the analogies of the law, that being the period during which a judgment remains a lien upon lands, and also the period of the right of entry upon lands as against persons in possession under color of title.

In McCoy v. Morrow, 18 Ill. 519, which is the leading case upon this subject, "twenty-five years had elapsed after the death of the debtor before filing the claims for allowance, and some eighteen after final settlement of administration had elapsed, before the filing of the claims, and the revival of administration for the purpose of proceeding against lands for their satisfaction; and in the meantime, and nineteen years after the death of the debtor, the heir conveyed the land, and the purchaser held the same by said deed duly recorded, before any step had been taken by the creditors to enforce their claims. In that case the court held, that if the creditor failed within a reasonable time to enforce his claim against real estate, he would be held to have waived it. Without deciding what would be a reasonable time, the court intimate by Skinner, J., that, by analogy to the lien of judgments and the limitations

of entry upon, and actions for the recovery of lands, seven years ought to be the prescribed limit. That was an action of ejectment, and the court held the deed from the heir to prevail over that of the administrator.

In Langworthy v. Baker, Adm'r, 23 Ill. 484, the owner, a non-resident of this State, had died in 1834, and administration was granted to the public administrator in this State in 1855. A claim upon a note dated in 1828 was allowed, with over twenty-six years' interest, and a decree was entered that land be sold for its payment. In a direct proceeding to reverse this decree, by the minor heirs of the deceased debtor, the court held the lien to be lost by gross laches, but again expressly refrained from fixing any period as a uniform rule of limitation, and approved the doctrine laid down in McCoy v. Morrow, *supra*.

In Rosenthal, Adm'r v. Renick et al., 44 Ill. 202, the Supreme Court reversed the judgment of the county court, denying an application of this nature, where the petition had not been filed within seven years from the death of the intestate, who was a resident of the State of Ohio at the time of his death, for the reason that the estate was still unsettled in Ohio, and the creditors may have been deterred from resorting to these lands by the hope of receiving payment there. In that case the court, by Laurence, J., say: "But, where the legislature has not thought proper to fix a definite and inflexible period of limitation, it does not become the courts to do so. While it may be said, generally, that this secret lien is entitled to no special favor, and courts should be intolerant of laches, because the lien is secret, yet, in the absence of a legislative rule, every case must be left to depend largely upon its own circumstances."

It is also intimated that, if the land had been aliened by the devisee, for a valuable consideration, before the filing of the petition, or even if money had been expended by the devisee himself in improving the same, the court would have had no hesitation in holding that the lapse of more than seven years between the death of the debtor and the filing of the petition would have been sufficient reason for denying its prayer. It

is further intimated that a much shorter period than seven years might be properly applied to protect innocent purchasers against this secret lien, and even where the title is still in the heirs, the seven years rule might properly be applied unless the delay is explained. In that case the debtor died in 1854, and no administration was had upon his estate in Illinois until more than seven years after his death. But the parties contesting the decree were devisees of the deceased debtor, and by his will he had expressly charged his lands in Illinois with the payment of his debts. They had expended no money upon the estate, and could not suffer any by the apparent laches of the creditor. The court held the proceeding not barred by lapse of time.

In Moore v. Ellsworth, 51 Ill. 308, the delay was sufficiently explained by the fact that the largest claim against the estate had been in litigation for some time, and until the termination of that litigation, the administrator would be wholly uncertain to what extent it would be necessary to sell real estate. The court citing Rosenthal v. Renick, *supra*, say, "Each case must be judged upon its own merits, and all that can be said as a general rule is, that a delay of seven years, if unexplained, is a sufficient reason for refusing the order; but if the delay is satisfactorily explained, as by showing the settlement of the estate has been necessarily delayed, and the lands remain in the same condition as when the decedent died, the mere lapse of time is not a reason why the order of sale should not be made."

In Clark v. Hogle, 52 Ill. 427, it was held that, where by reason of the destruction of the records by fire, the creditor was unable to ascertain the condition of the decedent's estate, a bill in chancery, for discovery of assets and for sale of realty, might be brought after the lapse of seven years.

In Burson v. Goodspeed, 60 Ill. 277, it was held not too late to file a petition eleven years after the grant of administration, where the right of homestead and dower intervened to such an extent as to endanger the interest of the creditors in case of an immediate sale. The court, by Sheldon, J., say: "It is quite evident that forcing the land to sale at public auction, encumbered as it was with the claims of homestead and dower,

would have been a palpable sacrifice of the creditor's rights in the land; that they would not have derived any appreciable benefit from the sale; as expressed in the petition of the creditors against it, the heirs would have lost the land and the creditors their debts.   What just cause of complaint have the heirs that that result was not precipitated?   We think it unreasonable to hold the creditors bound to resort to a fruitless and destructive sale."   In that case, the land still remained in the hands of the heirs, and no valuable improvements had been placed upon it since the death of the intestate.

In Wolf v. Ogden, 66 Ill. 224, the debtor had left a widow and children, who were entitled to the homestead but had ceased living upon it for eleven years; fourteen years having elapsed between the death of the intestate and the filing of the petition.   This delay was not sufficiently explained by the fact that the administrator and the creditors believed that, for eleven years, while the premises were not occupied by the family, the same had been rented for the benefit of the minor heirs, as it was their duty to inform themselves as to the fact.   The court further hold that the evidence to excuse the delay, if any such existed, should have been preserved in the record, which, not having been done, and no excuse alleged in the petition or found by the decree in the cause, the same was reversed.

From the foregoing review of the decisions of our Supreme Court, it will be seen that the rule contended for by appellee has never yet been applied in strictness as a rule of limitation; but, as said in several of the opinions, each case must rest upon its own merits, and the period of seven years should be adopted as the limit within which proceedings should be instituted to enforce the lien, unless special circumstances are shown explaining the delay.   Bishop et al. v. O'Conner, 69 Ill. 431.

In this case there is no question made as to the justice of the debt sought to be made out of the land in question; nor is it contended that any delay is attributable to the creditor in the presentation of his claim against the estate.   The only question is, whether or not, having duly probated his claim against the estate, he has lost his lien by reason of unreason-

able delay in having a petition filed for the sale of the real estate to pay it.

That there should be some limitation of time to the commencement of such proceedings, to prevent speculation in stale claims against dead men's estates, and for the protection of *bona fide* purchasers, minors, and heirs and devisees who have spent money in the improvement of their inheritances, is highly necessary; but where the statute provides no definite rule, courts must adopt such principles in the decision of each particular case as will be for the promotion of justice, and not to its detriment.

The property in question came to the intestate through the will of John King, charged with a life estate in his widow and with one-fourth of $1,800 in legacies, to be paid at her death, to which must be added $550 in taxes, which ought to have been paid by the tenant for life, after his decease. Had an immediate application been made to sell the land for the payment of the debts, unless the widow and heirs of Andrew King had paid the same, their inheritance would have been cut off, the purchaser would have obtained the title in remainder, but would not have succeeded to the possession until after the death of the tenant for life in November, 1880, and in the meantime would have been required to pay the taxes annually accruing on the land to save it from sale, unless the tenant for life would do so, which the proof shows she did not.

Under these circumstances it was not unreasonable for the creditor to rest upon the promise made to him by the heirs, that his claim should be paid out of the land after the termination of the life estate. After the expiration of seven years from the death of the intestate, and when the tenant for life was fully ninety years of age, appellee, without any knowledge of the existence of the claims probated, would, according to his own testimony, only offer $325 for the interest of the widow and children of the deceased. This tends in some degree to show to what extent he considered the life estate, the legacies and the unpaid taxes impaired its value. Upon being informed of the existence of these claims, he lowered his offer to $250, and bought the land at that price. According to his own estimate,

McCollister v. King.

therefore, the interest of the widow and heirs of the deceased, without reference to the debts allowed against the estate, was less than the amount of said claims, and with his chances of beating them in a law suit, he was willing to give only $250. Having bought the land on speculation at that price, and, by reason of the termination of the life estate, having become possessed of an estate worth at least $900, over and above all other incumbrances, he does not seem in danger of suffering much injustice by having to pay off the claims with which it was incumbered when he purchased. The property evidently would have been sacrificed had the sale been made earlier, and we can not see that Harts stands in much better position, if any, than the heirs did before they sold to him. Vansyckle v. Richardson, 13 Ill. 171.

We are of the opinion the case comes within the ruling of the Supreme Court in Burson v. Goodspeed, *supra*, wherein the existence of a homestead and right of dower, which endangered the interests of the estate in case of an immediate sale, was considered a sufficient excuse for a delay of eleven years. In this case the intervening life estate was much larger than in that case, it here being an absolute estate for life in the entire income of the property, and the possibilities of a long continuance of this life estate being very slight, the tenant for life being over eighty years of age when Andrew King died. This intervening life estate, coupled as it was with the further charge of the legacies at its termination, afforded in our opinion a sufficient excuse for not making the application sooner. This being the only question presented by counsel on either side, the decree of the court below in dismissing the petition will be reversed and the cause remanded.

Reversed and remanded.