## THE PEOPLE *ex rel.* W. H. Wells *et al.*

*v.*

## WILLIAM C. LANHAM, Exr.

*Opinion filed February 20, 1901.*

1. HOMESTEAD—*homestead may be sold to pay debts after estate is extinguished.* A sale of the widow's homestead property, the value of which does not exceed $1000, cannot rightfully be made to pay debts of the deceased husband; but when such estate is extinguished the property becomes subject to the payment of unsatisfied claims, and it is the right and duty of the personal representative to proceed to sell the same.

2. LIMITATIONS—*rule of laches rather than of limitation applies to proceeding for sale to pay debts.* In proceedings by an executor or administrator to sell real estate to pay unsatisfied claims against the estate, the rule of *laches*, rather than of legal limitation, is to be applied, and hence mere lapse of time, if satisfactorily explained, does not bar the right to sell.

3. SAME—*when delay will not bar right to have land sold to pay unsatisfied claims.* If all the assets of the estate have been exhausted in the payment of debts excepting a tract of land not worth over $1000, occupied by the widow as a homestead, holders of unsatisfied claims may wait until the homestead estate is extinguished before applying for a sale of the property, notwithstanding more than twenty years have passed since such claims were allowed.

4. PLEADING—*demurrer does not admit conclusions of pleader.* A demurrer to an answer does not admit mere conclusions of the pleader, and in determining the demurrer the averments of the answer must be construed most strongly against the pleader.

*People ex rel.* v. *Lanham,* 91 Ill. App. 101, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

This cause originated in the county court of Vermilion county upon petition of appellants for a citation against the appellee to show cause why he should not proceed to sell certain real estate of which his testator died seized, for the purpose of paying claims theretofore probated and allowed in said court against the estate.

The petition sets out that on August 18, 1876, the testator died testate; that his will was duly admitted to probate in the county court of Vermilion county, by which the appellee, William C. Lanham, was appointed executor, to whom letters testamentary were at the time issued; that he then duly qualified as executor; that at the time of the death of the testator he was seized in fee simple of the north-east quarter of section 33, township 21, north, range 12, west, in said county, and of a large amount of other real and personal property; that by the will it was provided, first, that all the just debts and funeral expenses of the testator should be paid and discharged; and secondly, it devised to his widow, to have and to hold during her natural life, said north-east quarter of section 33, etc., in lieu of dower in his real estate; and thirdly, it provided in case the personal estate should prove insufficient to pay all his debts, "I hereby authorize and empower my executor hereinafter named to sell real estate at public or private sale, as he may see fit, for the purpose of raising a sufficient sum to liquidate my said debts and make all necessary conveyances therefor." The petition then sets out that at the time of his death the testator was indebted to divers persons, including the relators, which indebtedness was duly allowed by said county court of the seventh class, to be paid after preceding classes; that all the claims allowed of that class after the last distribution of February 23, 1880, amounted to a total of $7059.39, all claims of preceding classes having been then paid, and upon which distribution there was paid *pro rata* on the seventh class claims $2727.05, leaving a balance due on such claims of $4332.34, "after having exhausted assets except said lands devised to his widow for life in lieu of dower, and which she was then in possession of and occupying as a homestead, which possession and occupancy continued until her death, September 15, 1898; that at the time of the allowance of said claims Margaret Lanham, widow of

said testator, was seized of said life estate in said lands in lieu of dower; that the remainder in said lands was subject to the liens of said judgment creditors by the will and by law, and the excess thereof over and above said debts was to be paid to W. C. Lanham, contingent legatee; that at that time the value of said land did not exceed $1000 over and above encumbrances; that the sale thereof, encumbered by said widow's life estate, would have resulted in a sacrifice of said contingent remainder and a great loss to said creditors, and would not have raised funds to pay said creditors or any considerable part of their claims, or been of advantage to said W. C. Lanham, legatee; that accruing interest since that time has been such that at no time since has the value of the land over and above said life estate been such as to have paid any considerable amount of said debts or left a remainder to said W. C. Lanham; that for that reason petitioners have deferred enforcing their said liens, so that said life estate might be exhausted and said lands be sold to the best advantage of said creditors and said legatee; that no final settlement of said estate has been made by said executor; that he has never been discharged or released from the duties of his office; that said estate is still pending and unsettled in the county court; that on September 15, 1898, said Margaret Lanham died, leaving said lands discharged of her life estate; that thereby said lands have become assets of said estate and subject to the liens of said creditors and remainder due W. C. Lanham, legatee; that since the death of said widow the executor has taken no steps to preserve the assets or reduce the same to possession of said estate, or apply it to the payment of judgments of said creditors." The prayer is that the executor be cited to show cause why he should not proceed to sell said real estate to pay said judgments, as provided by law, and that upon a hearing he be required, by an order of the court, to proceed to sell the same to pay said judgments. This petition was

verified by the affidavit of two of the relators on January 13, 1899. In pursuance of the petition the citation was issued as prayed, which was served on the 27th day of January, 1899.

Appellee appeared and answered the petition, setting up that certain of the relators were dead; also, that the alleged claims of petitioners were entered in judgments against said estate more than twenty years prior to the filing of the petition and issue of the citation, and were barred by the Statute of Limitations and *laches,* which he invoked in bar of the alleged claims of the petitioners; that all said lands except the north-east quarter of the north-east quarter of said section 33 were sold by the respondent many years ago, the last deed by him, as executor, being of date August 2, 1879, to Margaret Lanham, recorded in book 58, page 404; that at the time of the testator's death said forty acres was occupied by him and his wife as their residence and homestead; that from the time of his death to the widow's death it was the residence and homestead, worth not more than $1000; that claims probated and allowed were not liens against said forty acres, it being exempt from forced sale under the homestead exemption laws of the State; that at the time of making the deed to Margaret Lanham (August 2, 1879,) the then judge of said county court told respondent that he was discharged from further administration, and from that time respondent believed that he was discharged as such executor of said estate; that at the time of the death of said testator the respondent was his sole heir-at-law and sole devisee under said will, and that he stands upon his legal rights in the premises, and objects and protests against payment of any claims barred by the statutes of limitation and not a lien on said forty-acre tract remaining unsold; that he has for many years last past considered and treated said estate as fully settled and his said land free from any liens of the alleged claims, each and all of which were probated against said

estate prior to the year 1879 and barred by said statutes of limitation, and prays to be dismissed. This answer was sworn to by the respondent February 6, 1899.

On February 8 of that year the petitioners filed a general demurrer to this answer, which on May 8 was sustained, and the defendant electing to stand by his answer, an order was entered against him to proceed to sell the real estate of decedent, or so much thereof as might be necessary to pay the balance of the debts probated against said estate. From that order the defendant prayed and was allowed an appeal to the circuit court of said county, which he afterwards perfected, and the cause being there heard, the demurrer was overruled. Thereupon the petitioners entered their motion for leave to amend the petition, which motion was disallowed, and they elected to stand by their demurrer, and judgment was entered against them for costs of the proceedings. To this order the petitioners excepted and prayed an appeal to the Appellate Court, which was allowed and perfected. In the latter court the assignment of errors questioned the decision of the circuit court in overruling the petitioners' demurrer to the answer of defendant and refusing to grant the relief prayed in the petition, and that "the court erred in not holding that the forty acres held by the widow until her death, as a homestead, was subject to the debts of the petitioners, their heirs and assigns, and should be sold to pay same." The Appellate Court has affirmed the judgment of the circuit court, and appellants now bring the record to this court by appeal.

GEORGE R. TILTON, and WILLIAM L. CUNDIFF, for appellants:

There is no statutory period within which a lien of this kind must be enforced, and where the delay is explained, a mere lapse of time is not a reason why an order of sale should not be made. The fact that the land was encumbered by the homestead and dower of the

widow is a sufficient explanation of the delay in institut-
ing proceedings until her death; and the creditors were
not obliged to force a sale while the land was thus en-
cumbered, and to thus sacrifice their claims to avoid the
operation of either the legal rule of limitations or the
equitable rule of *laches.   Judd* v. *Ross,* 146 Ill. 49; *Bursen*
v. *Goodspeed,* 60 id. 278; *Moore* v. *Ellsworth,* 51 id. 310; *McCoy*
v. *Morrow,* 18 id. 519; *Rosenthal* v. *Renick,* 44 id. 205.

Lands of a testator are chargeable with his debts, and
where chargeable with both debts and a legacy the cred-
itors have a priority.   *Lewis* v. *McGraw,* 19 Ill. App. 313;
1 Story's Eq. 524; *Kidney* v. *Coussmaker,* 12 Ves. 136; *Myer*
v. *McDougal,* 47 Ill. 278.

The right to sell the homestead of the widow to pay
debts of the testator, after the exemption ceases, has
been fully recognized.   *Lewis* v. *McGraw,* 23 Ill. App. 313;
*Bursen* v. *Goodspeed,* 60 Ill. 278.

PENWELL & LINDLEY, and O. M. JONES, for appellee:

The will, in requiring the debts to be paid, is merely
declaratory of the statute, and the estate is administered.
upon as is intestate estate.   *Rawson* v. *Rawson,* 52 Ill. 62.

The allowance of a claim against an estate is a judg-
ment.   *Barnes* v. *Maring,* 23 Ill. App. 68; *Stone* v. *Wood,* 16
Ill. 177; *Mitchell* v. *Mayo,* id. 83; *Noe* v. *Moutray,* 170 id. 176.

Judgment in any court of record in this State may be
revived by *scire facias,* or an action of debt may be brought
within twenty years next after the date of such judg-
ment, and not after.   Starr & Cur. Stat. chap. 83, sec. 26.

The presumption is that after lapse of twenty years
the judgment has been extinguished.   Legal presump-
tions are conclusive.   *Scammon* v. *Swartwout,* 35 Ill. 345.

This presumption of payment cannot be rebutted by
mere proof of non-payment in fact.   *Fisher* v. *New York,*
67 N. Y. 73.

A devise of real or personal estate for the payment
of just debts does not revive a debt barred by the Statute

of Limitations. (*Roosevelt* v. *Mark*, 6 Johns. Ch. 266.) Hence
no significance should attach to the testator's direction
to pay off debts.

An allowed claim against an estate is a judgment, and
is barred by the Statute of Limitations in twenty years,
and cannot be enforced. *Barnes* v. *Maring*, 23 Ill. App. 68.

In Illinois it is the duty of the administrator to plead
the Statute of Limitations. *McCoy* v. *Morrow*, 18 Ill. 519;
*Heirs of Langworthy* v. *Baker*, 23 Ill. 484.

An heir may show that no debts exist for the payment
of which land is sought to be sold. A debt barred is the
same as no debt. *Dorman* v. *Tost*, 13 Ill. 127; *Dorman* v.
*Lane*, 1 Gilm. 143.

It is not accurate to say lands descend charged with
payment of debts. They are only liable to be on absence
of personalty, and the right may be lost by lapse of time.
*Bishop* v. *O'Conner*, 69 Ill. 432; *Noe* v. *Moutray*, 170 id. 169.

An administrator takes no interest in the realty, save
a naked power to sell in case the personal estate is in-
sufficient to pay debts. *Noe* v. *Moutray*, 170 Ill. 169.

No final formal order of discharge is needed. *People* v.
*Kohlsaat*, 168 Ill. 37.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only question for our decision is whether the an-
swer showed a sufficient reason why the defendant should
not be ordered to sell the real estate, as prayed in the
petition, and for the purposes of that decision the alle-
gations must be taken as true. The presumption must
be, in the absence of anything appearing to the contrary,
that the sale and conveyance of all of the lands except
the forty acres occupied by the widow as a homestead
was regular under the power contained in the will, and
hence the only question here is, whether the error last
assigned should be sustained.

The defenses set up in the answer are two: First, that
the judgments upon the claims of the petitioners were

entered more than twenty years prior to the filing of the petition, and therefore barred by the twenty years Statute of Limitations; and second, that upon the sale and conveyance of all the other real estate and the distribution of the proceeds the respondent was discharged, as executor, from further administration.

The language of the Statute of Limitations relied upon is as follows: "Judgments in any court of record in this State may be revived by *scire facias*, or an action of debt may be brought thereon within twenty years next after the date of such judgment, and not after." Starr & Cur. Stat. (2d ed.) chap. 83, par. 26, p. 2643.

Treating the allowance of the claims of petitioners as judgments in a court of record, by the express language of this section they could not be revived by *scire facias*, nor could an action of debt be brought upon them at the time of the filing of this petition. Does it necessarily follow that they cannot be enforced by a petition of the executor to sell land to pay them after the expiration of twenty years from the allowance of the claims? In other words, is the right of an administrator to sell land to pay debts absolutely barred by reason of the foregoing twenty years Statute of Limitations? The statute authorizing and making it the duty of an administrator to sell real estate to pay debts of the intestate after the personal assets have been exhausted, fixes no time within which the application shall be made. We held in the early case of *McCoy* v. *Morrow*, 18 Ill. 519, that by analogy, as a general rule, the application must be made within seven years after the allowance of the claims, but it was there said (p. 524): "The creditor, under our law, has ample means of, without delay, compelling administration, and, through administration, subjecting the debtor's estate, real and personal, to the payment of the debts against the estate. If he fails to do so within a reasonable time he will be held to have waived his lien against property descended, and the grantee of the heir will take

the title discharged of the lien. It is not necessary in this case to decide what shall be a reasonable period of time for that purpose," etc. In *Rosenthal* v. *Renick*, 44 Ill. 202, it was again held that in cases where the delay of the creditors is unexplained, even where the title is still in the heirs, the period of seven years from the death of the intestate may be properly adopted, by analogies of the law, as a bar to such liens, and that even a shorter limitation may be applied to protect innocent purchasers against the secret lien, and it was said "the facts of each case must decide the limitation to be applied," and in that case the application was held to be within a reasonable time long after the expiration of the seven years. To the same effect is *Moore* v. *Ellsworth*, 51 Ill. 308, where the application was held to be in due time though more than nine years had elapsed.

The rights of creditors of an intestate's estate to enforce the collection of their claims against real estate is defined in *VanSyckle* v. *Richardson*, 13 Ill. 171, as follows (p. 173): "Under our statute the lands of an intestate are held subject to the payment of his debts. After the personal estate is exhausted it is made the duty of the administrator to apply to the proper court and obtain a license to sell so much of the real estate as will be sufficient to discharge the residue of the debts. The proceeds of the sale are declared to be assets in the hands of the administrator. (Rev. Stat. chap. 109.) Creditors are not compelled, as at common law, in order to procure satisfaction of their debts, where there is a deficiency of assets for the purpose, to pursue the lands into the hands of the heir, or to charge the heir with its value in the case of an alienation by him. They have only to establish their demands against the administrator and he is required to make payment out of the personal estate, and, when that proves insufficient, to convert enough of the real estate into assets to meet the deficiency. The statute, in effect, reserves a lien on the lands of an intes-

tate to secure the payment of any excess of indebtedness beyond the proceeds of the personal estate. This lien is to be enforced by the administrator for the benefit of the creditors generally. The lien, however, is not perpetual, but may be lost by gross *laches* or unreasonable delay. The real estate descends to the heir with this charge resting upon it. He cannot encumber or alien it to the prejudice of the rights of creditors. He acquires a vested, but not an absolute, interest in the land. He takes a defeasible estate, liable to be defeated by a sale made by the administrator, in the due course of administration. He has no just claim to the land until the indebtedness of his ancestor is fully discharged. He acquires an absolute title only to what remains after the debts are extinguished,"—citing authorities.

As shown both by the petition and answer in this case, the forty-acre tract was held and occupied by the widow from the decease of the testator until her death, being at no time of the value of more than $1000, and during that period that homestead could not have been sold by the executor to pay debts. "No sale can be rightfully made of the homestead by the administrator of the deceased householder to pay his debts when the property does not exceed in value $1000, until the exemption in favor of the widow and minor children has been in some mode terminated, and if such a sale is made, a court of equity has the power to set the same aside at the instance of the homestead occupant. The homestead, when not exceeding $1000 in value, cannot even be sold subject to the homestead right." (*Hartman* v. *Schultz*, 101 Ill. 437, followed in *Mueller* v. *Conrad*, 178 id. 276.) It is equally well settled (as it is, in effect, held in these cases,) that when the homestead right ceases to exist the property so held becomes subject to the payment of unsatisfied claims against the estate, and it is the right and the duty of the administrator to proceed to sell the same for the payment of such debts.

It is perfectly clear from what has been shown, that from the death of the intestate, Thompson B. Lanham, until the death of his widow, the forty acres occupied by the latter as a homestead could in no way have been reached by the petitioners for the satisfaction of the unpaid balance of their claims by enforcing a sale thereof, either absolutely or subject to the homestead rights of the widow, and it is equally clear that after her death they were entitled to demand of the executor that he proceed to sell the same, unless they were barred of that right by the lapse of time. There is no more reason for saying that by analogy the right was absolutely barred by the twenty years Statute of Limitations, than for saying it was barred absolutely by analogy to the seven years Statute of Limitations. In either case, the facts and circumstances being such as that the remedy to enforce the collection of the claims was suspended or the delay excused, neither statute could be applied by analogy.

In *Bursen* v. *Goodspeed*, 60 Ill. 277, we reiterated the doctrine announced in *McCoy* v. *Morrow, Rosenthal* v. *Renick*, and *Moore* v. *Ellsworth, supra*, and held that the land sought to be sold to pay debts, being occupied as a homestead by the widow, the value of which was less than $1000, the sale of which during the existence of the homestead and dower rights would have yielded little or nothing for the satisfaction of the debts, could, under the circumstances, be sold after the death of the widow, even though some twelve or thirteen years had intervened between the death of the intestate and the filing of the petition, and it was there said (p. 281): "There were here both the rights of a homestead and of dower in the land, the former to continue, if there was occupancy of the premises, until the youngest child should become twenty-one years of age, and until the death of the widow, unless extinguished by the payment of $1000; and by virtue of the latter right the widow was, by the statute, entitled to retain possession of the land until her dower should

be assigned, which appears never to have been done. The land descended to the heirs subject to the debts. The amount of the indebtedness was so large in comparison with the value of the land that it may be said that, aside from the homestead right and the enjoyment of the rents and profits until the land might be sold to pay debts, the heirs had no substantial interest in the property; and as it was no interference with the full enjoyment of the rights of homestead and dower and of the rents and profits, it is not perceived wherein there was injustice to any one in consulting the interests of the creditors by delaying to enforce a sale until those rights might become extinct. It is quite evident that forcing the land to a sale at public auction, encumbered, as it was, with the claims of homestead and dower, would have been a palpable sacrifice of the creditors' rights in the land; that they would not have derived any appreciable benefit from the sale. As expressed in the petition of the creditors against it, the heirs would have lost the land and the creditors their debts. What just cause of complaint have the heirs that that result was not precipitated?' We think it unreasonable to hold the creditors bound to resort to a fruitless and destructive sale."

· In the later case of *Judd* v. *Ross*, 146 Ill. 40, the petition was by an administrator *de bonis non* to sell sixty acres of land, twenty of which had been assigned to the widow as and for her dower in the real estate of which her husband died seized, and forty of which, being of less value than $1000, she occupied as her homestead. Other lands had been sold by the former administrator and the proceeds applied upon the fourth class claims, amounting to $1404.40, leaving a balance of principal unpaid of $660.90, to pay which latter sum and accrued interest a second application by the administrator *de bonis non* was made. As shown by the facts of the case, these claims had been probated and allowed in the county court at least twenty-four years prior to the filing of said last

petition, but the widow had continued to occupy the premises as dower and homestead until her death, which occurred in the year 1892, shortly prior to the filing of the petition. The heirs of the intestate answered. One of their claims was, that the administrator *de bonis non* had not been legally appointed. They denied the validity of the claims against the estate and claimed that they were barred by lapse of time. It was held that the administrator *de bonis non* had been legally appointed and that the validity of the claims had been determined upon the former application to sell land to pay them, so that that question was *res judicata*, and could not be questioned upon the application to sell the remaining lands set off to the widow as her dower and occupied by her as a homestead; and we said (p. 49): "The only remaining question to be considered is whether the creditors whose claims were allowed against the estate have lost the right to enforce payment by sale of real estate, by delay and lapse of time. It will be observed that the sixty acres of land which the petitioner now seeks to obtain a decree to sell were set off to the widow as her dower. The forty-acre tract was the homestead of Patrick Ross when he died, and the estate of homestead became vested in the widow after his death. From the time the land was set off to the widow she occupied it, in person or by tenant, until her death, in 1892. As soon as the widow died and the land became released from the dower of the widow and her homestead rights by her death, this proceeding was instituted to subject the land to sale to pay the unpaid balance due upon the debts of the deceased. The statute has not provided a period of limitation within which an administrator must file a petition to sell lands to pay debts, but in analogy to our Statute of Limitations relating to the lien of judgments, the period of seven years has been adopted as the proper time within which the application should be made. This may be regarded as the general rule. But if the delay is satisfac-

torily explained, the mere lapse of time will not bar an application for leave to sell land to pay debts. Here, the fact of the land having been set off to the widow as dower and forty acres of the sixty encumbered with the right of homestead, and being in the occupancy of the widow by herself and tenants, was a sufficient reason why proceedings were not instituted to subject it to sale by an administrator. Had it been subjected to sale, encumbered, as it was, with the widow's dower and homestead, nothing would have been realized from the forty-acre tract, and the other twenty acres would not have sold for more than would, in all probability, pay the costs. The proceeding would therefore have resulted in no benefit to any one. The creditors would have secured nothing and the land would have been sacrificed. Had the land been forced to sale at auction, encumbered as it was, it could not have been sold for more than a nominal sum. Moreover, no person has acquired any interest in the land, by purchase from the heirs or otherwise, but, on the other hand, it remains now in the same condition as it did at the death of Ross. Under such circumstances, as was held in_Bursen v. Goodspeed, 60 Ill. 277, we think the delay was explained, and it should not work a bar to a proceeding to sell the land after the dower and right of homestead had been extinguished." The decree of the county court denying the petition was accordingly reversed and the cause remanded.

The rule to be applied in such applications is rather the doctrine of *laches* than of legal limitation, and the last cited case is decisive that mere lapse of time between the allowance of claims in the county court and the filing of a petition to sell land to pay them, if satisfactorily explained, is not a bar to the proceeding, even though more than twenty years has elapsed.

The case of *Barnes* v. *Maring*, 23 Ill. App. 68, is cited as authority for the contention that the claims of petitioners in this case were barred by the twenty years

Statute of Limitations.  The question with which the court was there dealing was entirely different from that which is presented here.  There, as shown by the facts, the widow seeking to open up the administration had no excuse whatever for the many years of delay.  The administration had been closed by a final report to the county court more than twenty-five years prior to the application.

The second question is, does the answer sufficiently show that the respondent had been discharged as executor at the time the petition was filed?  While, as we have said, the demurrer admits the facts well pleaded in the answer it does not admit mere conclusions of the pleader, and the familiar rule that averments are always to be taken most strongly against the pleader must also be recognized in determining whether a demurrer is well taken.  The answer in this case does not show that any final settlement of the estate has ever been made, or that any report was ever made by the respondent to the county court as to his administration.  He simply says that the then judge of the county court told him that he was discharged from further administration, and that from thence on he had believed that he was discharged as executor of said estate.  It cannot be seriously insisted that creditors of an estate would be concluded by what the county judge said to the administrator, in or out of court, not by way of ruling upon any matter connected with the administration, or by what the administrator may have believed as to his being discharged. There is no similarity between the facts averred in this answer on this branch of the case and *People ex rel.* v. *Kohlsaat,* 168 Ill. 37, cited as holding that no formal order of discharge is needed.

We are unable to agree with the judgments of the circuit and Appellate Courts as to the sufficiency of the answer of the respondent, and are of the opinion that the ruling of the county judge upon the same should be

sustained. The judgments of the Appellate and circuit courts will accordingly be reversed, and the cause will be remanded to the circuit court of Vermilion county for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*