# JOHN ATKINSON *et al.*

## *v.*

## JAMES CASH.

1. CHANCERY—*settlement of partnership matters.* Where one of several partners files a bill for a settlement of the partnership affairs, the court has power to render such a decree as the equity of the case may require, and no cross-bill is necessary in order to establish the rights of the other partners.

2. PARTNERSHIP—Rule of settlement in a particular case.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. FULLER & SMITH, for appellant Atkinson.

Mr. A. B. JENKS, for appellants Emanuel and Ono Earnshaw.

Messrs. E. & A. VAN BUREN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by James Cash, on the 3d day of September, 1873, against John Atkinson, Emanuel Earnshaw and Ono Earnshaw, to compel a settlement of the co-partnership matters of Earnshaw, Atkinson & Co., which firm had at that time been dissolved.

The firm was composed of four members, Emanuel Earnshaw, Ono Earnshaw, John Atkinson and James Cash, and commenced business on the 26th day of November, 1869, and continued the business until the 31st day of January, 1873, when it was dissolved, and a new firm, by the name and style of Earnshaw, Worthy & Co., was formed for the purpose of continuing the same business.

About one year after the firm had commenced business, James Cash filed a bill in equity, in the Superior Court of Cook county, against the other members of the firm, to compel a settlement and a dissolution of the firm. By agreement of the parties, John Atkinson was appointed receiver, and, as such, assumed control of the business matters of the firm. He continued to act in this capacity until about the 11th day of March, 1872, when, the bill having been dismissed, Atkinson was, by consent of all the members of the firm, selected as superintendent of the business of the firm, and continued to act in that capacity until the 31st of January, 1873. During this time, a large amount of money belonging to the firm had accumulated in his hands.

The moneys received by Atkinson, while acting as receiver, were accounted for by him, in a report filed in the Superior Court, under oath, which showed such account was balanced within a few dollars.

The first question, therefore, to be determined, is, the amount of money received by Atkinson, and remaining in his hands, belonging to the firm, while acting as superintendent, from the 11th day of March, 1872, to the 31st of January, 1873.

Upon this point, there is but little ground for dispute. The master in chancery, to whom the cause was referred to state the account, found, from the evidence, that Atkinson had in his hands the sum of $20,528.83, but there was due him, for services as receiver, the sum of $84, leaving a net balance in his hands, for which he should account to the firm, of $20,444.83.

The finding of the master in chancery is clearly and fully sustained by the evidence.

Two book-keepers were selected, one by Atkinson and the other by the other members of the firm, to examine the books and make a report of the amount of money in Atkinson's hands. They, after a careful investigation, find the amount reported by the master. The book-keepers in charge of the books while the business was being transacted, all agree in regard to the amount in Atkinson's hands. In fact, Atkinson himself is unable to give any intelligent account showing a less amount than $20,444.83 in his hands.

We regard it, therefore, as an established fact that Atkinson had in his hands, belonging to the firm, the sum of $20,-444.83. This amount belonged equally to the four members of the firm, and had there been no further dealing between the parties in regard to this balance, there would be no difficulty in rendering a decree for a division of the fund.

But on the 14th day of January, 1873, Ono Earnshaw purchased of John Atkinson all his interest in the partnership property, including Atkinson's share of the money in his hands, belonging to the firm, and a contract was entered into as follows:

"CHICAGO, ILL., January 14, 1873.

"Received of Ono Earnshaw the sum of one hundred dollars, in part payment on John Atkinson's interest in quarry at Lemont, owned by the firm of Earnshaw, Atkinson & Co.; also all book accounts and money that may be in my hands belonging to the aforesaid firm, and everything pertaining to the company's business, and now owned by the company.

"Conditions of sale: $15,000 being price of said interest, payable, one-half down; the other half payable, half in one year from date, the other half in two years from date, at the rate of ten per cent interest per annum, to be secured by trust deed on half interest in the quarry, including all except live stock belonging to said Ono Earnshaw.

(Signed) "JOHN ATKINSON,
"ONO EARNSHAW."

Afterwards, on the 31st of January, 1873, another contract in writing was executed between the same parties, in which it was agreed that the deed from Atkinson to Earnshaw for the property sold, together with the notes of Earnshaw and deed of trust securing the same, should be placed in the hands of Melville W. Fuller, *in escrow;* that the books of the firm of Earnshaw, Atkinson & Co. should be examined by two book-keepers to be chosen, who should examine and report the state of the account between Atkinson and the firm, and if, upon investigation of the books, it was found that Atkinson was indebted to the firm in an amount equal to $15,000, then the money and notes agreed to be given by Earnshaw to Atkinson were to be taken by the latter in payment and satisfaction of the $15,000 so due as aforesaid. If the amount was found to be less than $15,000, Earnshaw was to make up the difference, and if greater than that amount, Atkinson agreed to pay the excess.

After the book-keepers made their examination and report, which showed a balance of over $20,000 in the hands of Atkinson, Earnshaw insisted upon having the matter closed up, and the deed delivered to him as they had agreed, but Atkinson declined, unless the other members of the firm would join with Earnshaw in signing a release of the $15,-000.

This led to the making of another agreement. Emanuel Earnshaw agreed to join in the release if Ono would pay him his portion of the $15,000 in some other way. James Cash agreed to join in the release if the other members of the

firm would give him an order on Atkinson for one-fourth of the money in Atkinson's hands, so that he could get his share of the money directly from Atkinson.

An agreement was, therefore, signed by all the members of the firm, releasing Atkinson from the payment of $15,000, money in his hands belonging to the firm. An order was also drawn on John Atkinson, in favor of James Cash, for $5150.60, which was signed by Ono and Emanuel Earnshaw, and James Cash. This was delivered to James Cash, but the order has never been paid, in whole or in part.

Under these circumstances, the question arises, what decree would be proper in order to afford proper protection to the rights of all the parties.

We apprehend that it is fully established by the evidence that, in the purchase made by Ono Earnshaw, he acquired the interest of Atkinson in the money in his hands belonging to the firm. This is shown by the agreement of January 14, 1873, as well as by the language used in the contract of January 31, where it is expressly stated that the purchase includes Atkinson's interest in the book accounts and money, Indeed, Atkinson admits, in his evidence, that, in the trade. if the books showed that he owed more than $15,000, he was to hand it over. But the two written contracts are conclusive upon the question.

After the sale was concluded between Atkinson and Earnshaw, Atkinson had no claim on any portion of the money in his hands which he had received as superintendent of the firm, but one-half thereof belonged to Ono Earnshaw, and James Cash and Emanuel Earnshaw were entitled to have the balance divided equally between them; but, by the sale, Atkinson canceled $15,000 of the indebtedness due the firm, which amount, under the contract entered into between James Cash and Emanuel and Ono Earnshaw, was received by the two Earnshaws. This would still leave in the hands of Atkinson $5444.83 to be paid over.

James Cash had received no part of the fund to which he

was entitled as a member of the firm. When, therefore, the other members of the firm gave him an order on Atkinson for $5150.60, this may be regarded as an equitable assignment of that portion of the fund named in the order to James Cash, which Atkinson was, in equity, bound to pay over to him on the order. *Martin* v. *Naylor*, 1 Hill, 583.

If we are correct in this view of the case, the decree of the court below should have required Atkinson to pay James Cash the amount of the order, $5150.60. This would still leave in Atkinson's hands the sum of $294.23, which belongs to Emanuel and Ono Earnshaw; and the decree should have required Atkinson to pay that amount to them.

The fact that no cross-bill was filed by the Earnshaws, can make no difference. A court of equity has the power, on a bill to settle a co-partnership matter of this character, to render such a decree as the equity of the case may require.

The decree of the court below will be reversed and the cause remanded, with directions to the court to enter a decree requiring Atkinson to pay James Cash $5150.60, and also to pay to Emanuel and Ono Earnshaw the sum of $294.23.

*Decree reversed.*