THOMAS D. WILCOXON

*v.*

MITCHELL H. WILCOXON *et al.*

*Opinion filed October 25, 1902—Rehearing denied December 4, 1902.*

1. PLEADING—*when cross-bill is necessary to relief on bill for partnership accounting.* The general rule that affirmative relief will not be granted a defendant unless he files a cross-bill, applies to a bill for dissolution of partnership and an accounting, where one of the partners desires affirmative relief upon grounds other than that of an adjustment of the accounts of the partners.

2. LACHES—*complainant should state in the bill what he relies upon to overcome presumption of laches.* One who delays for over twelve years after knowledge of the facts before seeking relief in equity must set up what he relies upon to rebut the presumption of *laches.*

3. SAME—*when pendency of former suit does not remove imputation of laches.* The presumption of *laches* arising from a delay of twelve years in filing a bill for relief in equity is not overcome by a showing that for nine years a bill by the defendants against the complainant for a dissolution of partnership and an accounting was pending, which bill complainant answered but filed no cross-bill, and which was dismissed at the end of such period, over complainant's objection, where the relief sought by the complainant in his bill is of a character which could not have been granted in the former proceeding without his filing a cross-bill.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. JAMES S. BAUME, Judge, presiding.

H. T. WILCOXON, and BURCHARD & BURRELL, (T. A. MORAN, of counsel,) for plaintiff in error.

J. A. CRAIN, for defendants in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is a writ of error sued out to bring into review the decree entered in the circuit court of Stephenson county dismissing a bill in chancery filed by the plaintiff in error against the defendants in error, on the ground the plaintiff in error had neglected and omitted to assert the alleged right sought to be litigated by the bill for

such a great length of time as that he should be deemed guilty of *laches*.

The bill was filed on the 29th day of January, 1900. The plaintiff in error and the defendants in error are the children of one Thompson Wilcoxon, deceased. In 1879 the said Thompson Wilcoxon, who was then living but at quite an advanced age, was the owner of the Wilcoxon Opera House block and the Post-office block in the city of Freeport. These properties were of the approximate value of $50,000, and were encumbered for about the sum of $25,000. On August 19, 1879, the said Thompson Wilcoxon and Cyinde Wilcoxon, his wife, entered into an article of agreement with his children, said plaintiff in error and the said defendants in error. The substance of the agreement was that the said Thompson Wilcoxon and wife leased the said Opera House block and the said Post-office block to their children for a period ending on the first day of June, 1884,—practically five years. The lease contained a covenant on the part of the lessees "to assume all the indebtedness now existing against the estate of said parties of the first part, together with such additional indebtedness as shall be incurred in the erection and completion of said Post-office block, to the extent of all the revenues arising from the rentals of said buildings (except as herein provided) during the term of this lease," and that after retaining out of the income of the said properties a sum not exceeding $300 each per annum, the lessees, after paying the interest on the indebtedness, the taxes, insurance premiums, repairs, janitor service and other necessary expenses of managing the property, would apply the remainder of such income in the payment of the principal sum of the indebtedness against the property. The lease contained other covenants and provisions not necessary to be here stated. On the same day the plaintiff in error and the defendants in error entered into an agreement by which they formed a co-partnership for the purpose of managing the property

leased from their father, in and by the terms of which agreement the plaintiff in error was constituted trustee and agent, and authorized to lease the premises, pay all expenses mentioned in the lease, together with the sum of $300 to each of said parties, and to pay out the funds remaining in his hands upon the principal of the indebtedness on the property, etc., to keep accurate accounts of his acts and doings, and to receive as compensation for his services as trustee the sum of $200 per year. The instrument provided it should remain in full force for the period of five years from the date thereof, unless otherwise ordered by the parties thereto. Subsequently, on the 26th day of August, 1880, a supplementary agreement was entered into between the said parties, which provided that in view of the fact that said Thompson Wilcoxon had ceased to receive the income which he enjoyed when the lease was made, he should be paid $100 per month out of the general fund arising from the rentals of the property which the said parties held under the lease from said Thompson Wilcoxon. The purpose intended by the parties to be attained by the lease and by the agreement forming a partnership between them, which were executed contemporaneously and are to be construed together, was to endeavor to relieve the property leased to them from the burden of indebtedness against it, in which the lessees and co-partners were, as prospective heirs-at-law of said Thompson and Cyinde Wilcoxon, their father and mother, equally interested.

Before the execution of the lease said Thompson Wilcoxon had executed a will bequeathing all of his property to his wife, Cyinde. Of this it is clear the parties hereto were advised. They were all children of said Cyinde and her only heirs. Also, long prior to the execution of the lease, one Abigail Wilcoxon, an aunt of the parties hereto, had executed a will devising and bequeathing her estate, which consisted of a valuable farm of 480 acres of land, to said Thompson Wilcoxon. The

parties hereto were also advised of the execution of this will. On June 19, 1880, Abigail Wilcoxon made a will revoking her former will, bequeathing the bulk of her estate to the plaintiff in error, with remainder in fee to his three sons. Though not in chronological order, it may aid to a clearer understanding of the matter to state that afterwards Mrs. Abigail Wilcoxon conveyed her farm, subject to her life estate, to the plaintiff in error. The execution of the latter will by Abigail Wilcoxon came to the knowledge of said Thompson Wilcoxon and of the defendants in error, and on January 3, 1881, Thompson Wilcoxon executed a codicil to his will of August 28, 1852. This codicil manifestly anticipated a change by Abigail M. Wilcoxon in the disposition of her property, and provided that in the event she should change her will and leave her estate, or any portion of it, to his children or their heirs, then an amount equal should be deducted from the share of such child in his estate, and if the amount bequeathed by her to any of his children or their heirs should equal or exceed in value one-fourth of the total valuation of both estates, then such child should not receive any part of his estate.

On June 20, 1881, Thompson Wilcoxon, and Cyinde, his wife, executed a warranty deed conveying the Opera House and the Post-office blocks, aforesaid, to the defendants in error. The plaintiff in error insists that he did not know that his father had conveyed the said two blocks to the defendants in error, or that the codicil had been executed by his father to his will, until in 1887. He continued to serve as trustee under the co-partnership agreement until the month of March, 1888. In his bill filed herein on the 29th day of January, 1900, he avers the defendants in error, "falsely and maliciously contriving to deceive and defraud complainant, withheld from complainant any information or knowledge of the execution and delivery of said deed, and permitted, allowed and encouraged complainant to continue to act in good

faith in respect to said property as though the right, title and interest in and to said property was as it had been at the time of the making of said co-partnership agreement and said lease; that the execution and delivery of said deed was a gross fraud upon complainant and a violation of said agreement and said lease, and by virtue thereof said agreement and said lease *either* became null and void as to complainant, and that complainant was thereby released and discharged from them, and is therefore entitled to recover all moneys expended or appropriated by him or on his account, under and by virtue of said agreement and said lease, for the benefit of said premises and said estate or for said defendants, and also all moneys by him or on his account expended, used or appropriated for the erection and completion of the said building, and to recover a reasonable and adequate compensation for his services and labor rendered and performed in compliance with said agreement and said lease, and any and all damages by him sustained by reason of said fraud and said violation of said agreement and said lease, *or* that said defendants should be declared to hold the property purchased and acquired by them by virtue of said deed as trustees, for the mutual and equal benefit of all of the parties to said co-partnership, upon complainant contributing his equal *pro rata* share of the purchase money paid for said property, which complainant is ready, willing, able and offers to do, and complainant should recover his equal share of the net proceeds of the rents, issues and profits of said property, and should share equally with said defendants all benefits and emoluments arising or growing out of the ownership of said property from the date of the execution of said deed, upon contributing and bearing his share of the burdens arising and growing out of said ownership, which complainant is willing, ready, able and offers to do." The prayer of his bill is for relief in the alternative, according to the statement in his bill set forth above.

The bill admits the plaintiff in error was informed in 1887 that his father had conveyed the leased premises to the defendants in error. This bill was not filed until more than twelve years after the plaintiff in error, by his own admission, had full knowledge and information of the execution of the deed. The plaintiff in error realized that unless relieved from the imputation of *laches* this delay would operate to bar his suit. For this reason he alleged in the bill, as an excuse or explanation for the delay, that the defendants in error in 1890 exhibited a bill in chancery against him for a dissolution of the co-partnership between them and for an accounting of the affairs of the co-partnership and of his trusteeship; that he filed an answer to the bill; that the cause continued pending in the court until March 6, 1899, when it was dismissed by the defendants in error; that he applied to have the order of dismissal set aside and the cause re-instated, but his application was denied, and that he instituted the present proceeding within less than one year after the denial of his motion. The record of the proceedings in that case was produced in evidence. The view of the chancellor was that the grounds upon which the plaintiff in error bases his prayer for relief in this case were not involved within the issues made by the bill and answer in the case brought by the defendants in error against the plaintiff in error for an accounting. The contention of the plaintiff in error is, that the relief sought by the present bill could have been, according to the rules of the chancery practice, granted in the former proceeding upon his answer alone and without a cross-bill, had not the defendants in error, against his will and over his objection, abandoned the prosecution thereof, and that for that reason he should not be deemed guilty of *laches*.

The bill in the former case was for the dissolution of the partnership and the adjustment of the partnership accounts. In actions in equity for an accounting the

prayer of the complainant that an accounting be had and taken authorizes the court, upon a hearing, to render such decree as shall be justified by the result of the accounting. It is not necessary the bill for accounting between the parties shall allege the defendant is indebted to the complainant on an accounting. (15 Ency. of Pl. & Pr. 1083.) If the accounting, when taken in pursuance of the scope and prayer of the bill, shows the complainant to be indebted to the defendant whom he has brought into the court for the purpose of having the accounts between them judicially investigated and adjusted, the court will decree payment by the complainant to the defendant accordingly,—and that without a cross-bill on the part of the defendant. The benefit of the prayer of the bill is extended to the defendant as well as to the complainant, as to all matters within the scope of the bill. The bill praying an accounting implies an offer to pay whatever, if anything, should be found due from the complainant to the defendants. In bills in equity for the dissolution of co-partnerships and for an accounting between the partners as to the partnership affairs all the partners are regarded as actors, and the accounts between them as partners are stated and the rights of each partner determined and enforced in the same manner, whether appearing as complainant or defendant in the pleadings. (*Atkinson* v. *Cash,* 79 Ill. 53; *Nyburg & Provine* v. *Pearce,* 85 id. 393; 15 Ency. of Pl. & Pr. 1095; 5 id. 635.) This is the rule, however, only where the whole scope of the bill is the adjustment of the accounts of the partnership and the ascertainment of which of the partners is indebted to the other upon an investigation of the co-partnership affairs. The general rule in chancery that affirmative relief will not be granted a defendant unless he files a cross-bill therefor, applies in bills for the dissolution of a partnership and an accounting between the partners if one of the partners desires affirmative relief upon grounds beyond the

scope of the bill filed by the complainant,—that is, upon grounds other than that of an adjustment and balancing the accounts of the partners. In *Norman* v. *Hudleston*, 64 Ill. 11, and *Price* v. *Blackmore*, 65 id. 386, which were bills in equity for accounting, affirmative relief was granted by the trial courts on answers, and the decrees were each reversed because the .relief was given under answers, not, as we subsequently explained in *Nyburg & Provine* v. *Pearce, supra*, because a cross-bill was necessary to justify a decree awarding the defendant a recovery of the amount found to be due from the complainant, but because the relief granted in each case was for matters beyond the scope and purpose of the complainant's bill.

The scope and purpose of the bill filed by the defendants in error against the plaintiff in error were to procure the judicial investigation and determination of the state of the accounts of the different members of that firm, and particularly of the accounts of the plaintiff in error, who, by the agreement between the co-partners, had been placed in the active management and control of the business affairs of the firm and was made the custodian of the income from the property leased by them. The relief sought to be obtained by the plaintiff in error by the present bill is entirely foreign to the scope and purpose of the bill filed by the defendants in error in the former case. The relief asked by the plaintiff in error by the present bill is that the execution and delivery of the deed from Thompson Wilcoxon conveying the Opera House block and the Post-office block to the defendants in error shall be held and decreed to be a fraud upon his rights and to operate to render null and void the articles of co-partnership, and that an accounting shall be had and taken upon the theory that said lease and articles of co-partnership are and were nullified by the alleged fraud in the matter of the making of said deed and were without legal force or effect, and that the plaintiff in error should be decreed entitled to recover compensation

for his services and labor rendered and performed in and about the management of the property described in the lease, and the renting thereof and collecting the rents and paying the same out, etc., not in accordance with the provisions of the articles of co-partnership as to his compensation therefor, but for such compensation as should be shown to be reasonable and adequate, without regard to the contract; or, in the alternative, that the defendants in error should be declared to hold the property conveyed to them by said Thompson Wilcoxon as trustees, for the mutual and equal benefit of all the parties to said articles of co-partnership, upon payment by the plaintiff in error of his equal *pro rata* share of the purchase money paid by the defendants in error for the conveyance of such property to them, and that an accounting should be had of the rents, issues and profits of the property, and of all expenses connected with its management, since the date of the execution of the said deed therefor to the defendants in error, and that the defendants in error should be ordered or decreed to pay to the plaintiff in error his equal net *pro rata* share of such rents, issues and profits, etc. It is very clear this relief could not have been granted in the former proceeding unless upon a cross-bill setting forth the grounds relied upon therefor and praying for a decree granting the same. It would have been error to have forced the defendants in error in the former case to have proceeded to defend themselves against the charges of fraud, on which the right to this relief is grounded, and to have decreed the relief sought, except upon a cross-bill.

It was the duty of the plaintiff in error to state in his bill in the case at bar whatever he relied upon to rebut or remove the presumption of *laches* arising from his delay of twelve years in seeking relief. (*Henry County* v. *Winnebago Drainage Co.* 52 Ill. 299; *Walker* v. *Ray*, 111 id. 315.) He knew before the lease and articles of co-partnership were executed that his aunt Abigail had made a will

devising her property (a valuable farm) to his father. He knew it was the expectation of his father and the defendants in error that the entire estate of his father, augmented by that devised to his father by his aunt, would eventually descend to himself and the defendants in error, as the heirs of his father and mother. He knew that the lease and the articles of co-partnership were made in that view and with this expectation on the part of all the parties thereto. Such was also his expectation at that time. The codicil to the will of his father, to the effect that any sum or the value of any property received by either the plaintiff in error or any one of the defendants in error from their said aunt Abigail should be deducted from the share of such person in the estate of the father, was executed for the purpose of preserving an equality among the children of the testator in the property of the testator and the aunt of the parties hereto. The deed from the father of the parties hereto to the defendants in error was made for the reason Mrs. Abigail Wilcoxon had executed a new will devising her farm to the plaintiff in error. Mrs. Abigail Wilcoxon, upon learning that the father of the parties hereto had conveyed the property covered by the lease to the defendants in error, conveyed the farm, subject to her life estate, to the plaintiff in error. If plaintiff in error desired to retain the benefit of the property received from Mrs. Abigail Wilcoxon, and to insist that the articles of co-partnership should be deemed to have been nullified by the conveyance of the Opera House and Post-office blocks to his co-partners, and that he thereby became entitled to be released from all obligations under the agreement of co-partnership, and entitled to refuse to accept compensation for his services rendered under the agreement at the sum fixed thereby and to demand compensation *quantum meruit* for his services, and to recover damages sustained by reason of the alleged fraud upon him, or if he intended to retain all he had received from his aunt and to claim

that he was entitled to be regarded and accepted as though he were a grantee with said defendants in error in said deed from his father, and entitled to share, as one of such grantees, in the rents, issues and profits in the premises conveyed by the deed, he should not have delayed to assert his rights for a period of twelve years after he had knowledge that his father had added the codicil to his will and conveyed the Opera House block and the Post-office block to the defendants in error, in fraud, as he alleges, of his rights as one of the lessees of that property.

The chancellor did not err in dismissing the bill on the ground plaintiff in error was guilty of *laches,* and the decree is affirmed.

*Decree affirmed.*