## John B. Horn et al. v. W. F. White et al.

1. ADMINISTRATOR—*when order removing, invalid.* An order removing an administrator which is not predicated upon a compliance with either of sections 30 or 113 of the Administration Act, is unauthorized and ineffectual.

2. SALE OF REAL ESTATE TO PAY DEBTS—*what laches in enforcing.* Notwithstanding an order of sale may have been obtained in apt time, a delay of twenty-three years unexplained in carrying out such order constitutes *laches.*

3. LACHES—*what does not explain.* The existence of a dower interest in real estate of a decedent does not explain *laches* in enforcing the sale of real estate to pay the debts of such decedent.

Petition to sell real estate to pay debts. Appeal from the Circuit Court of Pike County; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the November term, 1905. Reversed. Opinion filed June 8, 1906.

EDWARD DOOCY and WILLIAM MUMFORD, for appellants.

WILLIAMS & WILLIAMS and PAUL F. GROTE, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of Pike County, directing John B. Horn, as administrator of the estate of Thomas Cochran, deceased, to sell certain real estate to pay debts.

Thomas Cochran died intestate June 18, 1876, leaving him surviving no child or children or descendants of any child or children, but leaving surviving his widow, Ethelinda Cochran, and certain collateral kindred. August 18, 1876, the appellant, John B. Horn, was appointed administrator of the estate of said deceased, by the County Court of Pike County, and entered upon his duties as such. Claims were allowed against the estate in excess of the personal assets, to the amount of about $3,600. At the expiration of two years from the granting of letters of administration to said Horn, some of the appellees herein, creditors of said Thomas Cochran, filed their petition in the County Court, for a citation against said Horn, to compel

him to file a petition to sell real estate to pay debts, and upon the citation issued in pursuance of said petition the said Horn, on June 30, 1880, filed his petition as administrator, to sell real estate to pay the debts against said estate.    At the October term, 1880, the County Court entered an order directing the administrator to sell a part of the south half of the southeast quarter of section 24, containing 75.75 acres and 32 acres off of the east side of the northwest quarter of the southwest quarter of section 2, all in township 5 south, range 7 west, subject to the dower interest of Ethelinda Cochran.    In pursuance of said order, the said administrator, on January 22, 1881, offered said lands for sale, and the same were struck off to the highest and best bidders for $242.50, the 75.75-acre tract realizing $75 and the 32-acre tract realizing $167.50. Upon the filing of the report of said sale on March 1, 1881, it appearing to the County Court that said lands were sold for less than one-fourth of their real value, said sale was set aside and vacated, and the court directed the administrator to readvertise and again offer said real estate for sale.    No further attempt was made to sell said lands, until the filing, by the creditors of said estate, of the petition of March 22, 1904.

The 75.75-acre tract was sold at tax sale, June 4, 1883, for the state, county and Sny Island Levee Drainage District taxes for the year 1882 and prior years, and on October 20, 1885, a deed thereto was executed to the commissioners of said drainage district.    October 23, 1893, Ethelinda Cochran, widow of Thomas Cochran, conveyed said tract to Peter Brown.    On January 10, 1895, the commissioners of said drainage district conveyed said tract to Marion P. Brown, and on September 7, 1895, said Brown conveyed 62½ acres of said tract to said Ethelinda Cochran. June 13, 1898, said tract was sold to Isaac Strauss for the levee taxes for 1897, and a tax deed therefor was executed to said Strauss May 7, 1901.    July 11, 1902, said Isaac Strauss conveyed said tract to said Ethelinda Cochran.

December 14, 1885, an order was entered in the County

Court directing that a citation be issued to John B. Horn, administrator of the estate of Thomas Cochran, to be and appear in that court on the first day of the January term, 1886, to show cause why he should not make final settlement of said estate. The matter of said citation was continued from term to term thereafter until January, 1888, when, no citation having issued, the County Court entered an order removing said Horn as administrator, for a failure to make report and finally settle said estate, and directing him to pay over and deliver to his successor, when appointed, all moneys and effects of said estate in his hands, within ten days after demand made on him therefor. No successor to said Horn was appointed as administrator of said estate.

May 26, 1902, Ethelinda Cochran executed to G. W. and C. P. Klitz her bond for a deed of said 75.75-acre tract of land except 4½ acres, for the sum of $3,600, which bond did not become effective because of the failure of the obligee to make the payments required within the time limited.

October 2, 1903, the said Ethelinda Cochran filed her bill of complaint in the Circuit Court of Pike County against the heirs and creditors of the estate of Thomas Cochran and sundry other persons, praying that a decree be entered quieting title in her to the 75.75-acre tract of land. Appellees, the creditors of the estate of said Thomas Cochran, answered the bill and filed their cross-bill, setting up their rights as creditors and praying that said land be sold to pay the debts due them.

Thereafter, on March 22, 1904, appellees filed their petition in the County Court, setting up the facts heretofore recited, and alleging in explanation of their long delay in moving to have the real estate sold to pay debts that said real estate was of little value, the 75.75-acre tract being worth less than $200, and the 32-acre tract being worth less than $400; that all of said lands were subject to the dower interest of Ethelinda Cochran; that a sale of said lands by reason of the outstanding dower interest would have resulted in a sacrifice of said lands, without any benefit

to the widow and heirs of Thomas Cochran, or to the creditors of his estate; that from the death of said Thomas Cochran until a few months prior to the filing of the petition, the 75.75-acre tract by reason of its being swamp land lying in the Sny Island Levee Drainage District was subject to overflow and was of little value; that within said last few months there had been a phenomenal rise in the price of and an unprecedented demand for bottom lands in said drainage district, and said lands were worth $4,000. The petition concludes with a prayer for a citation against John B. Horn requiring him to show cause why he should not proceed to sell said real estate to pay debts, and that upon a final hearing thereon he be required to sell the same. To this petition appellants, Ethelinda Cochran and John B. Horn, as administrator of the estate of Thomas Cochran, interposed a demurrer which was overruled by the County Court, and an order there entered directing said Horn to sell the said real estate in pursuance of the order for sale originally entered. From this order appellants appealed to the Circuit Court, where they again interposed their demurrer to the petition, which demurrer was overruled.

Appellant John B. Horn thereupon filed his answer as administrator, and thereafter filed a disclaimer, averring that he was removed from his office of administrator January 3, 1888, by the County Court of Pike County. Upon the final hearing in the Circuit Court, the court by its order found that the dower of Ethelinda Cochran, in the real estate of which her husband, Thomas Cochran, died seized, had never been assigned to her; that by the quitclaim deed of October 23, 1893, to Peter Brown, conveying the south half of the southeast quarter of section 24, township 5, south range 7, the said Ethelinda Cochran had released and relinquished her dower therein and that the same was clear and free from any dower interest; that the description of the tract of land in the south half of the southeast quarter of section 24, being the 75.75-acre tract heretofore mentioned, should be corrected in the order of sale entered by the County Court at its October term, 1880,

so as to read as follows: The south one-half of the south-east quarter of section 24, in township 5 south, range 7 west of the 4th p. m. in Pike county, Illinois, excepting 4.25 acres more or less in the southwest corner thereof lying south and west of the Sny, and it was adjudged and ordered that the original order of the County Court be corrected accordingly, and that the lands should be sold by such corrected description. The court further found that John B. Horn, administrator, had not shown sufficient cause why he should not proceed and sell the real estate for the payment of debts; that the petitioners were entitled to have the 75.75-acre tract and the 32 acre tract heretofore mentioned sold for the payment of debts free and clear of the dower interest of Ethelinda Cochran, except in the 32-acre tract, which tract should be sold subject to her dower interest. And it was ordered that the administrator proceed to advertise and sell said lands in accordance with the law and the order of the County Court. From this decree, John B. Horn and Ethelinda Cochran appeal to this court.

It is insisted by appellants that John B. Horn is not administrator of the estate of Thomas Cochran, deceased; that said Horn was regularly removed from the office of administrator by the order of the County Court entered at its January term 1888; and that the order of the Circuit Court directing said Horn as such administrator to proceed to sell the real estate involved was unauthorized.

In the County Court, in response to the citation there issued against him, Horn appeared as administrator and so demurred to the petition then filed. His appeal from the County Court to the Circuit Court was taken by him as administrator, and he executed his appeal bond in that capacity. In the Circuit Court he appeared and answered the petition as administrator, and later, when an examination of the records of the County Court disclosed that a pretended order of removal had been there entered, he filed his disclaimer. While the fact that Horn appeared in the case as administrator would not affect the regularity of his discharge as administrator, or estop him from asserting

such discharge, it strongly tends to show that he had no knowledge of the order of discharge, and that he still considered himself to be such administrator.

Sections 30 and 113 of chapter 3 of the Revised Statutes designate the steps necessary to be taken by the County Court to revoke letters of administration, or to remove an administrator. Section 30 provides that the court shall summon the person charged to be in default or disqualified, to show cause why such revocation should not be made, and that when revocation is made the reasons therefor shall be stated at large upon the record, and section 113 provides that upon failure of an administrator to make settlement, the court shall order a citation to issue, requiring said administrator to appear at the next term of the court and make settlement of the estate or show cause why the same is not done, and if he shall not appear at the time required by such citation, the court shall order an attachment against the body of such administrator, and upon his failure to make settlement, after having been so attached, he may be dealt with as for contempt, and be removed by the court.

The order of the County Court entered December 14, 1885, for the issuance of a citation against Horn to show cause on the first day of the next January term why he should not make a final settlement of the estate contained no reference to the revocation of his letters of administration. No citation was issued in pursuance of such order and the cause stood continued from term to term thereafter, until the January term, 1888, when, no attachment having been ordered against his body, the County Court entered an order summarily removing Horn as administrator. It is manifest that the provisions of neither of said sections 30 or 113 were complied with by the court in assuming to effect the removal of Horn as administrator, and a compliance with the provisions of one or the other of those sections being necessary to give the court jurisdiction to act, it follows that the order of removal was unauthorized and ineffectual. Monroe v. The People, 102 Ill. 406; Hanifan v.

Needles, 108 Ill. 403; Wackerle v. The People, 168 Ill. 250; Frothingham v. Petty, 197 Ill. 418.

It is insisted that the Circuit Court had no authority to change or modify the order of sale entered by the County Court in respect to the description of the 75.75-acre tract. Upon appeal to the Circuit Court the hearing there was *de novo*, and that court had full authority to make any proper and necessary order in the case.

The crucial question is whether or not appellees are chargeable with *laches* in delaying for twenty-three years to compel the administrator to proceed under the order of the County Court entered at its October term, 1880, to sell the real estate involved for the payment of debts. It is insisted by appellees that as the proceeding in the County Court for the sale of the lands to pay debts was instituted in apt time, and an order for such sale was then entered, *laches* cannot be imputed to them on account of the subsequent delay on their part in compelling the administrator to sell said lands in conformity with the requirements of such order.

It has been repeatedly held in this state that a delay of seven years, after the grant of letters of administration, in presenting to the court a petition for the sale of lands of the decedent to pay debts is such *laches* as will bar the relief prayed, unless such delay is satisfactorily explained. Rosenthal v. Renick, 44 Ill. 202; Moore v. Ellsworth, 51 Ill. 308; Bursen v. Goodspeed, 60 Ill. 277; Judd v. Ross, 146 Ill. 40; Graham v. Brock, 212 Ill. 579.

"*Laches* is such neglect or omission to assert a right, as, taken in connection with lapse of time more or less great, and other circumstances causing prejudice to the opposite party, operates as a bar in a court of equity." Morse v. Seibold, 147 Ill. 318.

The rule attributing *laches* to a creditor, who, without sufficient excuse, delays seven years after grant of letters of administration to compel a sale of the real estate of the decedent to pay his debts, is applied by analogy to the statutory limitation upon the lien of judgments.

The application of the doctrine of *laches* as a bar to re-
lief in equity is not, however, dependent upon a legal lim-
itation, but is operative under certain conditions independ-
ently of any statute of limitations. Vermilion County
House v. Warner, 192 Ill. 594.

The fact, therefore, that an order for the sale of the real
estate here involved was procured in apt time will not pre-
clude the application of the doctrine of *laches* so as to bar
the enforcement of such order of sale, if, under the facts
and circumstances of the case, the long delay by appellees
in enforcing such order constitutes *laches*. And we are
clearly of opinion that a delay of twenty-three years in
enforcing such order, without sufficient excuse, must be
held to constitute *laches* as will bar the relief prayed.

While lapse of time, if satisfactorily explained, will not
constitute *laches* so as to bar the relief sought (Graham
v. Brock, *supra*), it has, in the absence of such satisfactory
explanation, been held, in equity, to constitute *laches*.
Vermilion County House v. Warner, *supra;* Wilcoxon v.
Wilcoxon, 199 Ill. 244. No hard and fast rule can be laid
down for determining when a demand becomes stale, or
what delay will be excused, but the question of *laches* is to
be determined upon the particular facts and circumstances
existing in each case. Rosenthal v. Renick, *supra*; Gra-
ham v. Brock, *supra*.

In the case at bar the main grounds alleged in the peti-
tion as excusing the delay in compelling a sale of the lands
involved, are, that the 75.75-acre tract was encumbered by
the widow's dower; that the lands were of little value and
a sale of the same would have resulted in a sacrifice with-
out benefit to either the widow or heirs of the deceased, or
to the creditors of his estate; and that by reason of a phe-
nomenal rise in the value of and an unprecedented demand
for said lands within a few months prior to filing said peti-
tion, said lands had become of considerable value, to wit:
of the value of $4,000.

While not alleged in the petition as a ground for the re-
lief prayed, there is some evidence in the record of the

pendency of a suit in the Federal Court, during some portion of the twenty-three years following the entry of the order of sale, with reference to the legality of certain bonds of the drainage district within which a part of the lands involved lie, but such evidence is too meager and indefinite to enable the court to determine the scope and effect of such suit, or to warrant it in considering such suit as a factor in excuse of the long delay.

Upon the death of Thomas Cochran, his widow, Ethelinda Cochran, became seized in fee of the undivided one-half of his real estate and was entitled to dower in the remaining one-half. The dower of the widow, therefore, was only an encumbrance upon one-half of the property involved. There was no estate of homestead in either tract of land.

The cases in which it has been held that the delay of a creditor in seeking to effect a sale of the real estate of a deceased debtor for the payment of his debts is excused where the land involved is encumbered by dower or homestead, are readily distinguishable from the case at bar. In Burson v. Goodspeed, 60 Ill. 277, a delay of thirteen years was excused, because the real estate of the deceased debtor, of the value of $2,000, was encumbered by an estate of homestead and the dower of the widow. In Judd v. Ross, 146 Ill. 40, the lands sought to be sold had been set off to the widow for her dower and homestead, and it was held that a proceeding instituted directly after the extinguishment of those encumbrances was in apt time. In People v. Lanham, 189 Ill. 326, the premises involved were not worth to exceed $1,000 and were occupied by the widow as a homestead, and as application for sale was made as soon as the homestead estate was extinguished, it was held there was no *laches*. In the case at bar there was no estate of homestead in the lands and the dower of the widow was an encumbrance upon only one-half of the lands.

Conceding that the conveyance by the widow to Peter Brown in October, 1893, of her interest in the 75.75-acre tract extinguished her dower in the undivided one-half of

said tract, the 32-acre tract still and now remains encumbered by her dower, and there has been no change in its condition in that respect since the order for sale was entered in 1880.

The fact therefore that the 32-acre tract was encumbered by the widow's dower in 1880 presents no excuse for the failure of appellees to compel its sale, because said tract is still encumbered by her dower. As was said in McKean v. Vick, 108 Ill. 373, where the explanation offered for the delay was that the tract sought to be sold had been assigned to the widow as her dower and had continued to be occupied by her as a homestead: "This explanation is not satisfactory. The condition of the town lot is precisely now what it has been all the time. If the fact of its being encumbered by the widow's dower and homestead was ever a reason why it should not be sold, that reason still exists."

The sale of the two tracts in 1881 was set aside by the court, because the amount then realized therefor was less than one-fourth of their value. As the sale was ordered to be made subject to the widow's dower, it was necessarily made to appear to the court that with such dower encumbrance the property was worth much more than was realized for it. Certainly the court did not assume to set aside the sale because of inadequacy of price, when such inadequacy was due to conditions imposed by the order of sale which the court was powerless to remedy.

The allegations of the petition and the proof offered in this case considered most favorably for appellees, lead us to the conclusion that appellees delayed proceedings to compel the sale of the lands involved, not that said lands might be relieved of the dower encumbrance of the widow, but solely because the lands were intrinsically of so little value that the amount realized from their sale would not appreciably liquidate the claims against the estate. The gist of appellees' case lies in the allegation of the petition and the proof offered that within a few months prior to the filing of the petition there had been a phenomenal rise in the value of and an unprecedented demand for the 75.75-acre

tract of land, and we are constrained to the conclusion that these are the sole reasons which prompted appellees to action, and that prior to such change in the condition of the property appellees had practically abandoned any intention to compel a sale of it.

In Graham v. Brock, *supra*, it was sought to excuse a delay of nineteen years in filing a petition to sell real estate to pay debts, upon the ground that for many years the property was practically worthless, and only recently advanced in value, so as to justify a sale. It was held that such an explanation did not constitute a sufficient excuse for the long delay, and the relief was denied.

During the twenty-three years following the order of sale the property here involved was unproductive, and it is manifest from the evidence in the record that the payment from year to year of the general and drainage taxes levied upon the property was a matter of great embarrassment to the widow; that the property was repeatedly sold for taxes, and subsequently redeemed by the widow. During all this time appellees did nothing to assert their rights, and it is fair to presume they would have remained inactive and indifferent, if the property had not suddenly and very appreciably increased in value.

Appellees for twenty-three years have merely speculated, at the expense of the widow, upon the possibility of a sufficient advance in the market value of the property to enable them to realize upon their claims. This attitude does not commend itself to our consideration as a sufficient excuse for their long delay.

The order of the Circuit Court is reversed.

*Reversed.*