NICK BESKOS, Respondent, v. NICK BITTIS and George Bittis, Appellants. NICK BESKOS, Respondent, v. GEORGE BITTIS, Appellant.

(235 N. W. 348.)

Opinion filed March 2, 1931.

*Charles L. Crum* and *Sullivan, Hanley & Sullivan,* for appellants.
*Cameron & Helgeson,* for respondent.

BURKE, J.   Two actions were instituted by the plaintiff against the defendant.   One action to wind up the affairs of a co-partnership engaged in the operation of a pool hall in the city of Bismarck, North Dakota, and for an accounting between the parties; the other to determine the ownership of an automobile in which the plaintiff claimed to be a. joint owner, the defendants claiming to be the sole and absolute owner.   The case was tried as one action under a stipulation, that a jury should render a verdict in each case.   Two questions were submitted to the jury, viz.:   "Were the plaintiff and defendants co-partners in the operation of the pool room, and what interest did the plaintiff and the defendant, George Bittis, have in the automobile?"   The verdicts were in substance, that the parties were partners, with

each owning a third interest in the pool room, and that the plaintiff, Nick Beskos, is the owner of one half interest in the Buick automobile. The trial judge made findings of fact and conclusions of law upon the verdict of the jury in accordance therewith, and from a judgment entered thereon, the defendants appeal. The cases were argued and submitted to this court as one case upon the same briefs. In reference to the first case appellant says in his brief: "There are two issues in this case, first, was there a partnership? Second, if the court should hold that there was a partnership, did the court give George Bittis credit for all the items to which he was entitled in the accounting?"

It is the contention of the appellant that there was no partnership between the parties; that he (appellant) was the sole owner of the pool room business. Second, that the other parties to the action were in his employ at a hundred dollars per month; that he purchased the business, and all the fixtures from Sam Nicola for $13,000, that he had $1,600 of his own money and borrowed enough money at the bank to make a cash payment of $5,000 on the pool hall; that subsequently the $1,500 advanced by Nick Beskos was paid out of the business, the balance of the purchase price of the business was likewise paid out of the business, and Nick Beskos and Nick Bittis were paid a salary of $100 a month. In support of his contentions, he proved that the bill of sale for the pool hall was made directly to him. He kept the books and paid all the debts. He gave the mortgage on the pool hall property for the balance of the purchase price. The lease which Nicola had on the building was assigned to him, and on the first of February, 1930, a new lease was made in his name. In fact, all the documentary evidence is in the name of George Bittis. On the other hand, Nicola testified: "At the time of the purchase and sale of the pool room business, that George Bittis said: 'that Nick Beskos had a half and half partnership in the business' and that he talked with Bittis when he was in the hospital and Bittis said: 'I am putting my heart and soul into it (the business) and Nick hasn't got much experience and he invested his money and I would like to make good.' At the time the bill of sale was made out George said, 'I want it in my name.'"

At first they had a checking account in the bank in the name of Bittis & Beskos, but later the account was in the name of the American Billiard and Bowling Parlors, George Bittis, Proprietor.

A number of other witnesses told about conversations with George Bittis in which he said, that Nick Beskos was a partner. Ted Sheldon said: "In the spring of 1930, I was there trying to write some insurance. I heard 'Little Nick' had sold out and was going to Minneapolis. I said is that right? And George said, 'yes.' I said 'Little Nick,' what are you getting? He said, '$500 and the Buick car and so much a month.'"

Nick Beskos testified that there were partnership papers drawn. That he had a copy of the articles, but on April 1, he sold his interest to George Bittis, at which time he gave him the key and the copy of the articles of co-partnership; that by the terms of the contract each of the three partners had a third interest in the pool room business; that they agreed that the property was worth $15,000, and George Beskos was to receive in cash $500 or $1,000 and the automobile, the balance of his interest was to be paid by the month. This testimony is all denied by the defendant.

A careful examination of the record shows abundant evidence to sustain the verdict of the jury, and the finding of the fact of a partnership. The jurors and the trial judge saw the witnesses upon the stand, heard them testify and could judge of their credibility better than this court, and certainly we cannot say from this record that the verdict and findings are not well sustained by the evidence.

It is the contention of the appellant that the court erred in excluding or in not taking into consideration in the accounting a $1,000 note executed by the plaintiff to the defendant, George Bittis. Plaintiff denied giving the note, but admitted he gave a mortgage for $1,000 upon his car, to prevent the taking of the car on a debt which the plaintiff owed. George Bittis testified that the note and mortgage were given for $1,000 which he loaned the plaintiff. It is not claimed by anyone to be a partnership transaction.

The complainant prays for a dissolution of the partnership, the appointment of a receiver, and that an accounting be had between the defendants and the plaintiff of all the said co-partnership dealings and transactions from the commencement thereof, and moneys received and paid by the defendants, and all moneys received by the plaintiff herein from the defendants in relation to said business. It will be noted that this prayer for relief applies only to the partnership affair.

It is well settled, that in action in equity to dissolve a partnership the prayer of the complainant that an accounting be had, authorizes the court to render such decree as shall be justified by the result of the accounting. The benefit of the prayer of the bill is extending to the defendant, as well as to the complainant, as to all matters within the scope of the bill.

The general rule in chancery that affirmative relief will not be granted a defendant unless he files a cross-bill therefor, applies in bills for the dissolution of a partnership and an accounting between the partners, if one of the partners desires affirmative relief upon grounds beyond the scope of the bill filed by the complainant; that is, upon grounds other than that of an adjustment and balancing the accounts of the partners, it can only be granted upon a cross-bill or counter-claim. Norman v. Hudleston, 64 Ill. 11; Price v. Blackmore, 65 Ill. 386; Wilcoxon v. Wilcoxon, 199 Ill. 244, 65 N. E. 229, 13 Ann. Cas. 649; Armstrong v. Chemical Nat. Bank (C. C.) 37 Fed. 466; Brewer v. Norcross, 17 N. J. Eq. 219; Schulz v. Schulz, 138 Ill. 665, 28 N. E. 808, on rehearing, — Ill. —, 30 N. E. 317. There was no cross-bill or counterclaim in the instant case and no error in the exclusion of the note and mortgage from the record.

Appellants next claim that the court made an arbitrary cut-off in the partnership business as of April 1, 1930, and that the accounting should include the profits and losses up to the decree of dissolution, relying upon the case of Harding v. Zimmerman, 227 U. S. 489, 57 L. ed. 608, 33 S. Ct. 387. In that case one of the partners in the absence of the other partner assumed of her own motion to dissolve the partnership. She notified the other partner by letter that she had dissolved the relation, published a card in the local papers that the partnership had been dissolved, and that she would thenceforth conduct the business for her own benefit. The court held, that where one party attempts to illegally dissolve a partnership without suit, and subsequently the other brings a suit for dissolution in accordance with the statute the former must account for all the profits until the final decree of dissolution.

In the instant case, the plaintiff claims that on the first day of April, 1930, they dissolved the partnership by the sale of his interest, that at that time he turned over to the defendants the key to the build-

ing, and his copy of the articles of co-partnership, that he had nothing to do with the business after that time and while he would have an interest in the partnership property, he does not claim and under the facts as stated in the record he would not be entitled to any of the profits of the business after the first of April, and there was no error in the court confining the accounting or making the cut off as of April 1, 1930.

In the automobile case it appears from the record that Nick Bittis had an interest in the automobile. According to the testimony of the plaintiff he traded in an automobile for $725 and paid at the time $75 in cash, making $800 altogether invested at the time of the purchase of the automobile. The balance on the automobile $725 was paid out of the profits of the pool room so that in addition to the $800 invested by plaintiff he would also be entitled to a third of the $725 which was paid out of the receipts of the business, or $241.66, that is, he would have $1,041.66 invested in the automobile and Nick Bittis and George Bittis would have $483.32 invested in the automobile. According to the testimony of George Beskos he paid the plaintiff $800 for the automobile, and while he admits that the balance of $725 was paid out of the profits of the business he claims that the plaintiff had no interest whatever in the automobile.

If the plaintiff's testimony is right the jury did not allow the plaintiff all that he was entitled to, and appellants are not prejudiced by the verdict of the jury and the findings and conclusions of the court.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.